******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE TAKIE O.*
## (AC 44992)

Alvord, Elgo and Seeley, Js.

*Syllabus*

The petitioner, the Commissioner of Children and Families, sought to terminate the respondents' parental rights with respect to their minor child. Due to the COVID-19 pandemic, the trial on the termination petition was held remotely via Microsoft Teams. The respondent father was represented by counsel and participated in the proceedings through audio and video means. The respondent mother consented to termination. At the conclusion of the trial, the trial court rendered judgment terminating the respondents' parental rights. On the respondent father's appeal, *held* that the record was inadequate to review the father's claim that he was denied the right to confront the witnesses against him at the virtual trial in violation of the due process clause of the fourteenth amendment to the United States constitution: the father conceded that his claim was unpreserved because he did not raise it before the trial court; moreover, there was no factual record or factual finding on which this court could have based a determination of whether the father's right to confront the petitioner's witnesses was violated by the virtual format of the trial or whether the trial court correctly concluded that the government's interests were sufficiently great to warrant conducting the trial virtually; accordingly, the situation was analogous to those set forth in *In re Annessa J.* (343 Conn. 642), and *In re Vada V.* (343 Conn. 730), in which our Supreme Court recently determined that the respective respondents' claims failed to satisfy the first prong of the test for review of unpreserved constitutional claims set forth in *State* v. *Golding* (213 Conn. 233).

Argued September 6—officially released October 4, 2022**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of Hartford, Juvenile Matters, where the respondent mother consented to the termination of her parental rights; thereafter, the matter was tried to the court, *Hon. Stephen F. Frazzini*, judge trial referee; judgment terminating the respondents' parental rights, from which the respondent father appealed to this court. *Affirmed.*

*Matthew C. Eagan*, assigned counsel, with whom, on the brief, was *Albert J. Oneto IV*, assigned counsel, for the appellant (respondent father).

*Nisa Khan*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Evan O'Roark*, assistant attorney general, for the appellee (petitioner).

*Opinion*

PER CURIAM. The respondent father, Takie O., Sr., appeals from the judgment of the trial court terminating his parental rights with respect to his minor child, Takie O. (child).[1] On appeal, the respondent claims that he was denied the right to physically confront the witnesses against him at the virtual trial, conducted via Microsoft Teams,[2] in violation of the due process clause of the fourteenth amendment to the United States constitution.[3] We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On May 4, 2017, the respondent and Lisa S. were arrested following an incident in which East Hartford police officers observed the child, who was six years old, sitting without a seat belt in the front seat of a vehicle being driven by the respondent. The police found nineteen bags of marijuana packaged for sale in Lisa S.'s purse and ninety-three bags of marijuana inside the child's bookbag, which also contained his school homework. The respondent also was found with two bags of marijuana in his pocket. The police notified the Department of Children and Families (department). When the department investigator spoke with the respondent that same day at a basketball court, the respondent appeared "to be impaired by marijuana" and acknowledged that he was unable to care for the child due to substance abuse issues.

On May 12, 2017, the petitioner, the Commissioner of Children and Families, filed an ex parte motion for an order of temporary custody, which was issued, and a neglect petition. On May 19, 2017, the order of temporary custody was sustained by agreement of the respondent and Lisa S. On August 8, 2017, the respondent and Lisa S. entered nolo contendere pleas to the neglect petition, and the child was adjudicated neglected and committed to the care and custody of the petitioner. The respondent and Lisa S. were given specific steps to facilitate reunification with the child. On December 26, 2019, the trial court approved a permanency plan of termination of parental rights and adoption. In February, 2020, the petitioner filed a petition seeking to terminate the parental rights of the respondent and Lisa S. as to the child on the ground that they had failed to rehabilitate. Subsequently, Lisa S. consented to the termination of her parental rights, and the petition was amended as to Lisa S. to allege consent as the sole ground for terminating her parental rights.

The trial court set forth the following procedural history. "The first hearing on the [petition] was initially scheduled for March 26, 2020, but was not held on that date because of the public shutdown caused by the COVID-19 pandemic. In June, 2020, before the next court date, the parents applied for and were appointed counsel for the [termination] proceeding. In late Decem-

ber, 2020, a new date for the initial [termination] hearing was scheduled for February 3, 2021. The court on that day confirmed that both parents had been served with orders of notice to appear that day, but since neither one was present the court scheduled a default trial for the following month. A default trial never did occur, however, and the court file reflects that counsel for the parents subsequently participated in a case status conference and two court hearings in March and April [2021]. The matter was subsequently assigned for trial before [the Honorable *Stephen F. Frazzini*, judge trial referee] to begin on June [25], 2021.''

The trial on the petition was conducted virtually using Microsoft Teams over two days, June 25 and 29, 2021, with the respondent appearing with his counsel on both days. On the first day of trial, the respondent joined the proceeding by telephone. All parties then identified themselves for the record, including the respondent. At some point during the first day of trial, the respondent appeared by video.[4]

When the petitioner's first witness experienced technical difficulties joining the proceeding, the petitioner's counsel remarked: "I will be relieved when . . . we're back in person." The court commented: "Well, I think that's going to happen pretty quickly. Apparently, the— I've been told that the Chief Administrative Judge has indicated [that termination of parental rights] trials should go in person ASAP." The court commented: "I don't know whether that's—we haven't gotten—we didn't get the email yet today, but it—I think it's—from my understanding it's imminent."

The petitioner presented the testimony of six witnesses and introduced exhibits into evidence, and the respondent's counsel cross-examined the petitioner's witnesses. The respondent's counsel periodically conferred with her client, including through text message. Specifically, counsel conferred with the respondent during cross-examination of the petitioner's witnesses,[5] before informing the court that the respondent elected not to testify, and during closing argument.[6]

In its memorandum of decision issued on July 27, 2021, the court terminated the parental rights of the respondent and Lisa S. The court found that the department had made reasonable efforts to reunify the respondent with the child. It found by clear and convincing evidence that the respondent had failed to rehabilitate. After making the seven findings required by General Statutes § 17a-112 (k), the court found by clear and convincing evidence that termination of the respondent's parental rights was in the child's best interest. This appeal followed.

On appeal, the respondent claims that "he was denied the right to confront and cross-examine personally adverse witnesses against him at the virtual trial, in

violation of the due process clause of the fourteenth amendment to the United States constitution."[7] The respondent concedes that he did not raise this claim before the trial court and, therefore, seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

Pursuant to *Golding*, "a [respondent] can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the [petitioner] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see also *In re Yasiel R.*, supra, 317 Conn. 781 (modifying third prong of *Golding*). "The first two steps in the *Golding* analysis address the reviewability of the claim, [whereas] the last two steps involve the merits of the claim." (Internal quotation marks omitted.) *In re Aisjaha N.*, 343 Conn. 709, 719, 275 A.3d 1181 (2022).

On June 20, 2022, our Supreme Court released its decision in *In re Annessa J.*, 343 Conn. 642,      A.3d     (2022), and its companion cases, *In re Vada V.*, 343 Conn. 730, 275 A.3d 1172 (2022), and *In re Aisjaha N.*, supra, 343 Conn. 709.[8] *In re Annessa J.* and *In re Vada V.* are controlling of the issue raised in the present appeal. Accordingly, we begin with a discussion of those cases.

In *In re Annessa J.*, supra, 343 Conn. 649–50, the trial court terminated the parental rights of the respondent mother, Valerie H., after a trial held virtually, via Microsoft Teams. Valerie's counsel joined in the respondent father's objection "to the trial court's conducting the trial via Microsoft Teams instead of in person . . . ." Id., 653. The basis for the objection was the suggestions by the respondents' attorneys that the court would be unable to see the parties and witnesses and would have difficulty making assessments regarding their demeanor and truthfulness. Id. The court denied the respondents' oral motion objecting to the virtual format, explaining that it had "talked to the chief administrative judge for juvenile [matters], and she confirmed that there is nothing precluding the court from going forward. And, in fact, the court has been directed by the chief court administrator's office to proceed, whenever possible, to go forward with matters that are necessary, important, and appropriate. I do believe that the matter can be conducted appropriately virtually. We do have the Connecticut Guide to Remote Hearings [for Attor-

neys and Self-Represented Parties] that was promulgated by the Judicial Branch. I intend to follow it.” (Footnote omitted; internal quotation marks omitted.) Id., 654. The court rejected the respondents’ contention that it would not be able to properly weigh the evidence. Id. The virtual trial proceeded, during which Valerie, through counsel, entered nine exhibits into evidence, and presented the testimony of three witnesses. Id., 655. Valerie also testified on her own behalf. Id. The court took corrective measures to address technical issues that arose during the trial, and the court “regularly paused the proceedings so that the parties could confer with their counsel.” Id.

On appeal, Valerie claimed, inter alia, that the trial court “violated her right to due process of law by precluding her from confronting witnesses in court and in person when it conducted proceedings over the Microsoft Teams platform . . . .” (Internal quotation marks omitted.) Id., 650–51. This court concluded that the record was inadequate to review her unpreserved federal due process claim. Id., 651. Following certification to appeal, our Supreme Court agreed with this court. Id., 661.

Our Supreme Court explained: “Unlike her state constitutional claim, which did not require any factual predicates because she claimed an unqualified right to an in person trial, Valerie’s federal constitutional claim is not based on an alleged unqualified right to confront the petitioner’s witnesses in person under the fourteenth amendment to the United States constitution. Rather, Valerie claims that she had the right to do so ‘in the absence of evidence demonstrating the existence of a compelling governmental interest sufficient to curtail the right.’ Valerie thus acknowledges that there are certain countervailing governmental interests that may be sufficient to justify curtailing any constitutional right to in person confrontation. Indeed, to address the merits of Valerie’s claim, this court would apply the three part test set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The third part of that test requires us to consider the governmental interests at stake. Id. . . . [T]he trial court explained that, ‘[d]ue to the COVID-19 . . . pandemic, the trial [on the termination of parental rights petition] was conducted virtually.’ As a result, we would need to consider the specific factual circumstances surrounding the trial and the COVID-19 pandemic to properly evaluate Valerie’s claim. As Valerie concedes, ‘[a]lthough the trial court referenced the COVID-19 public emergency as the reason for conducting the trial virtually, there was no actual evidence before the court that [SARS-CoV-2, the virus that causes COVID-19], threatened the health or safety of any of the persons involved in this particular case.’ It is for this reason that the record is inadequate to review Valerie’s unpreserved federal due process claim. Even if this court were to assume that Valerie

had a right to in person confrontation in the absence of compelling countervailing interests, this court has no factual record or factual findings on which to base a determination of whether that right was violated or whether the trial court correctly concluded that the government's interests were sufficiently great to warrant conducting the trial virtually." *In re Annessa J.*, supra, 343 Conn. 661–62.

Our Supreme Court further rejected Valerie's contention that "the lack of evidence in the record regarding 'whether there was a compelling reason to curtail her right [to] physical confrontation was not her burden to overcome under the first prong of . . . *Golding*.' " Id., 662. Our Supreme Court explained that, because the petitioner and trial court had not been put on notice that Valerie objected to the virtual format of the trial on the basis of a violation of her right to confront the petitioner's witnesses, the trial court "did not have occasion to make findings of fact regarding the threat posed by the COVID-19 pandemic and whether that threat was sufficiently compelling to curtail any constitutional right to in person confrontation." Id., 662–63. Thus, the petitioner bore no responsibility for the evidentiary lacunae, and it would be unfair to the petitioner for our Supreme Court to reach the merits of Valerie's claim " 'upon a mere assumption that [the factual predicate to her claim has been met].' " Id., 663. Accordingly, our Supreme Court agreed with the Appellate Court that the record was inadequate to review Valerie's claim. Id., 664.

In *In re Vada V.*, supra, 343 Conn. 732, 734, the court terminated the parental rights of the respondents after a trial held virtually, via Microsoft Teams, in October and November, 2020, during the COVID-19 pandemic. "The respondents were represented by separate counsel and participated in the proceedings through audio and video means." Id., 734. The respondent mother's counsel confirmed that she had been communicating with her client through text messages and email, and the respondent father's counsel indicated that he was communicating with his client through a messaging application. Id., 735–36. Although they experienced some connectivity issues, both respondents testified at trial. Id., 737.

On appeal, the respondents in *In re Vada V.* raised an unpreserved claim that "they were denied the right to physically confront the witnesses against them at the virtual trial, in violation of the due process clause of the fourteenth amendment to the United States constitution." Id., 733. Our Supreme Court determined that the record was inadequate to review the respondents' unpreserved claim, which was identical to the claim that it had considered in *In re Annessa J.* Id., 739–40. Our Supreme Court reiterated that, even if it were to assume that "there is a constitutional right to in person

confrontation, there is no factual record or factual findings for this court to rely on to determine whether that right was violated or whether the trial court correctly concluded that the government's interests were sufficiently great to warrant conducting the trial virtually." Id., 740.

Following the release of our Supreme Court's decision in *In re Annessa J.* and *In re Vada V.*, this court ordered the parties in the present case to submit supplemental briefs. The petitioner argues, inter alia, that "the record in this case is inadequate for review in the same manner as the Supreme Court explained that the respective records in *In re Annessa J.* and *In re Vada V.* were inadequate." The respondent contends that the record in the present case is adequate to review his claim.[9] In arguing that "the trial court believed it had no discretion in the decision of whether the trial should be held in person," the respondent highlights the trial court's remark that it had "been told that the chief administrative judge has indicated [that termination of parental rights] trials should go in person ASAP." The respondent contends that "the decision of whether to hold a virtual trial was not made by the trial court and that, indeed, the public health emergency brought on by COVID-19 had already been determined by authority outside the trial court to override not only confrontation rights but all other similar rights guaranteed by due process." Thus, according to the respondent, the "record is adequate to review [his claim] because the only question is whether the right to physical confrontation, if it applies to civil matters, can be overridden by a blanket administrative judicial order."

We disagree with the respondent that the comment made by the trial court renders the record adequate for review. It does not create the factual record required to apply the three part test set forth in *Mathews* v. *Eldridge*, supra, 424 U.S. 335. In the present case, the respondent's counsel did not raise any objection to the virtual format of the trial, let alone raise an objection on the basis that it violated the respondent's right to confront the petitioner's witnesses. Consequently, just as in *In re Annessa J.*, supra, 343 Conn. 662, and *In re Vada V.*, supra, 343 Conn. 740, there is no factual record or factual findings on which this court could base a determination of whether the respondent's right to confront the petitioner's witnesses was violated by the virtual format of the trial or whether the court correctly concluded that the government's interests were sufficiently great to warrant conducting the trial virtually. Thus, the respondent's claim fails under the first prong of *Golding*.

The judgment is affirmed.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon

order of the Appellate Court.

** October 4, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The court also terminated the parental rights of the respondent mother, Lisa S., who consented to termination and has not appealed from that judgment. We hereinafter refer to the respondent father as the respondent and to Lisa S. by name.

[2] Microsoft Teams is "collaborative meeting [computer software] with video, audio, and screen sharing features." Connecticut Judicial Branch, Connecticut Guide to Remote Hearings for Attorneys and Self-Represented Parties (November 23, 2021) p. 5, available at https://jud.ct.gov/HomePDFs/ConnecticutGuideRemoteHearings.pdf (last visited October 3, 2022).

[3] In his principal appellate brief, the respondent also raised an unpreserved claim that "the judgment terminating his parental rights was unconstitutional under article fifth, § 1, and article first, § 10, of the Connecticut constitution . . . where the trial was not conducted in the physical presence of the judicial authority." Considering the same unpreserved claim, our Supreme Court, in *In re Annessa J.*, 343 Conn. 642, 660,     A.3d     (2022), determined that the respondent had "failed to establish that there exists a fundamental right under article first, § 10, and article fifth, § 1, of the Connecticut constitution to an in person termination of parental rights trial." At oral argument before this court, the respondent's counsel conceded that this claim was no longer viable in light of *In re Annessa J.* Accordingly, we do not discuss it further.

[4] The following exchange occurred:

"[The Petitioner's Counsel]: . . . Your Honor, I would just note that there's another individual with [the respondent] that appeared on the screen a moment ago.

"The Court: I missed that. So, [respondent], is there—these proceedings are private and confidential, so are you on headphones so that only you could hear what's going on, or can anybody hear what's going on? Let's take that first.

"[The Respondent]: No, I'm in the room.

"The Court: And . . . is there someone else in the room with you?

"[The Respondent]: No, they not—she walking out. No, nobody not in here.

"The Court: But there—yes, I saw somebody in the background just a second ago after the lawyer mentioned it. But you need to make sure—

"[The Respondent]: Again, she walk—she walking back out. She . . . picked something off the floor.

"The Court: Okay, so—

"[The Respondent]: But she left out the room. She left out the room.

"The Court: Okay. If she comes back in again let me know, and I'll wait for her to leave, okay?

"[The Respondent]: Yeah."

[5] For example, following cross-examination of one of the petitioner's witnesses, the following exchange occurred:

"[The Respondent's Counsel]: One second, Your Honor. I just want to confer with my client really quick. It'll take a minute [because] I have to use text.

"The Court: No problem.

"[The Respondent's Counsel]: [Respondent], did you . . . get my text question?

"[The Respondent]: Yes. . . . I just was looking at it.

"[The Respondent's Counsel]: If there's something—am I all set with questions?

"[The Respondent]: Yep."

[6] After counsel for the child concluded his closing argument, the court informed the respondent's counsel that "it looks like your client wants to say something" and asked counsel whether she would like to confer with her client. The respondent's counsel then muted her microphone, and the court went off the record. When the proceeding resumed, the respondent's counsel made additional closing remarks regarding the respondent's prior inquiry of the social worker regarding housing.

[7] Counsel for the child adopted the brief of the respondent. At oral argument before this court, the petitioner's counsel represented that it is the department's understanding that the child was in support of the termination of parental rights at the time of the trial, that the child is still in support of the termination of parental rights, and that the child wishes to be adopted as soon as possible. When asked for the position of the child during oral argument, counsel for the child stated that the child enjoys being with his

maternal grandmother and wants her to adopt him, the child is in contact with his father, and the child has a relationship with his father.

[8] In the present case, the petitioner's counsel filed with this court a letter in which she represented that all counsel agreed that this court should hold oral argument in this appeal after the release of our Supreme Court's decisions in *In re Annessa J.*, *In re Vada V.*, and *In re Aisjaha N.*

[9] Counsel for the child adopted the supplemental brief of the respondent. See footnote 7 of this opinion.

————————————————